UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELO ROBINSON, | : | Case No. 1:14-cv-115 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| GEORGE CRUTCHFIELD, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER (Doc. 2)**

This civil case is currently before the Court on Plaintiff's motion for a temporary restraining order. (Doc. 2). Following an informal conference with the Court pursuant to S.D. Ohio Civ. R. 65.1, Defendants filed a memorandum *contra* (Doc. 9),[1] and Plaintiff filed a reply memorandum (Doc. 11). On March 10, 2014, the Court heard oral argument on the motion.

### I. BACKGROUND FACTS

Plaintiff is a thirty-seven year old resident of the United States who is currently in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), incarcerated at the Warren Correctional Institution ("WCI") in Lebanon, Ohio. (Doc. 2,

---

[1] Defendants include George Crutchfield (Warden at Warren Correctional Institution ("WCI")), Matthew Stricklin (Chaplin at WCI), Wanza Jackson (Religious Services Administrator for the ORDC), and the State of Ohio.

1

Ex. A at ¶ 1).[2] Plaintiff claims that he is a devout Muslim who has practiced his faith for the last twenty-one years. (*Id*. at ¶ 2). In accordance with his religious beliefs, Plaintiff believes he must restrict his diet to halal food only. (*Id*. at ¶ 2).

Muslims believe the *Qur'an,* often called the *Koran,* contains the teachings of Allah (Arabic for God).[3] The Qur'an remains the text which provides guidance and moral direction to Muslims in their practice of their faith. The Surah Al-Ma'idah, the fifth chapter of the Qur'an, is Arabic for "The Table Spread with Food."[4] The third verse of Al-Ma'idah reads: "[f]orbidden to you for food are: . . . blood, the flesh of swine, and the meat of that which has been slaughtered as a sacrifice for others than Allah." *Id.* Al-Ma'idah also instructs on the proper slaughtering of animals. *Id.* Muslims who follow halal rules eat meat slaughtered in accordance with Islamic law (*i.e.,* by slitting the animal's neck and allowing the blood to drain) and refrain from eating pork, food containing alcohol, and any food contaminated with pork or alcohol according to the third, fourth, and fifth verses of Al-Ma'idah. *Id.* Not all Muslims eat halal just as not all

---

[2] At oral argument, Defendants' counsel brought to the Court's attention that Plaintiff was transferred to another institution on March 4, 2014. Accordingly, counsel argued that the case should be dismissed as moot. *See, e.g., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding prisoner's claim for injunctive relief mooted by his transfer to a new facility). In the interest of judicial economy, the Court declines to dismiss this civil action. However, Plaintiff is ordered to amend the complaint forthwith.

[3] *Islam Basics,* Islamic Center of Greater Cincinnati, http://www.cincinnatiislamiccenter. org/islam_basics.html (last visited January 29, 2014).

[4] *Surah Al-Ma'idah (The Table Spread with Food)*, NobleQuran.com, http://www.dar-us-salam.com/ TheNobleQuran/surah5.html (last visited January 29, 2014).

2

Jewish people choose to eat kosher meals. However, some Muslims feel strongly that eating only halal food is required as an expression of their religious beliefs.

Aramark recently took over service of food to corrections institutions in Ohio. (Doc. 2, Ex. B). Aramark can provide halal meals at the same cost as it provides kosher meals. (*Id.* at 4).[5]

On several occasions, Plaintiff requested that Defendants provide him with halal meals. (Doc. 2, Ex. A at ¶ 5). These requests were denied because "the department provides a vegetarian meal." (*Id.*, Ex. A-1).[6] Plaintiff maintains that in addition to not offering halal meals, the food that is available is contaminated by utensils and gloves that touch non-halal food. (Doc. 2, Ex. A at ¶ 6). However, WCI does offer kosher meals to Jewish inmates and non-Jewish inmates who require a kosher diet. (*Id.* at ¶ 8).

Plaintiff asks this Court to issue an injunction requiring Defendants to provide him with halal meals.

---

[5] The halal and kosher meals provided by AMAMARK are the same: they cost the same per unit, they include the same food, and they are prepackaged meals. (Doc. 2-2 at PageID 40). The price per diem for the kosher/halal meal from ARAMARK is $3.609, which is the same price per diem as the meal served to the general inmate population. (*Id.*) If more than 260 kosher/halal meals are ordered, then the per diem price increases to $3.75. (*Id.*) The state has the option of using ARAMARK's recommended soy-based kosher and halal meals at no additional cost to the state as an alternative to the standard kosher/halal meals. (*Id.*) Plaintiff has not indicated that he is willing to eat the soy-based halal meal.

[6] The vegetarian diet is "halal," *i.e.*, lawful and permissible. Plaintiff is not required to eat food that is "haram," *i.e.*, unlawful and impermissible.

## II. STANDARD OF REVIEW

"The Sixth Circuit has explained that 'the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had.'" *Reid v. Hood*, No. 1:10 CV 2842, 2011 U.S. Dist. LEXIS 7631, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Id.* (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

Plaintiff bears the heavy burden of demonstrating its entitlement to a preliminary injunction. An "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of

4

success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III. ANALYSIS

The Court finds categorically that Plaintiff has not evidenced facts sufficient to warrant a temporary restraining order.

### A. Likelihood of Success on the Merits

Plaintiff seeks relief under the First Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Equal Protection clause. The Court will address each claim in turn.

#### 1. *First Amendment*

Inmates retain the First Amendment right to exercise their religion subject to reasonable restrictions and limitations. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).[7]

##### a. Sufficient to sustain the inmate

The right to receive a religious diet is not absolute, but is subject to reasonable limits in the context of prison regulations. While "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions…[i]f the prisoner's diet…is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010).

---

[7] The religion clauses of the First Amendment provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The first of the two clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious belief and practices of our Nation's people.

Prison administrators must provide Plaintiff with an adequate diet that is sufficient to sustain him in good health. *Colvin*, 605 F.3d at 290. Plaintiff has no right to choose the items on his menu, including meat that is slaughtered in accordance with Islamic law. *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999) ("[T]he fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient."). There is no constitutional right to meat. In fact, federal courts have consistently recognized that a prohibition of halal meat does not amount to a substantial burden on religious exercise when vegetarian options are available. *See, e.g., Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008).[8] "Plaintiff may prefer Halal meat entrees over the vegetarian and non-meat substitutes provided, but his food preferences, as a prisoner may be limited." *Sareini v. Burnett*, No. 08-13961-BC, No. 08-13961, 2011 U.S. Dist. LEXIS 34525, at *15 (E.D. Mich, Mar. 31, 2011).

---

[8] In *Abdullah v. Fard*, No. 1:95cv2059, 974 F. Supp. 1112 (N.D. Ohio July 7, 1997), a Muslim inmate at the Lorain Correctional Institution argued that his First Amendment and Equal Protection rights were violated because he was served a vegetarian meal as his accommodation for his Halal diet and denied meat. The district court held and the Sixth Circuit affirmed that:

(1) Plaintiff's religion was not substantially burdened because a vegetarian meal "is reasonably and constitutionally adequate";

(2) The policy to not provide Halal meat was reasonably related to a legitimate penological interest: providing a special diet to one subset of a faith group could lead to a barrage of similar requests from other inmates; and

(3) The fact that Jewish inmates received kosher food – including meat – while Muslims did not receive meat, does not prove that a discriminatory purpose exists. Defendants states reason for the apparent disparate treatment: "that the number of Jewish inmates requesting kosher meals is small and that Ohio suppliers are available to meet the demand for kosher food for those few inmates at a reasonable cost," was found to be a non-discriminatory purpose.

For the first time in his reply memorandum, Plaintiff maintains that given his health conditions, the vegetarian diet that the prison offers is not "sufficient to sustain" him in good health. (Doc. 2, Ex. A at ¶¶ 6-7). Plaintiff claims that he was diagnosed with ulcerative colitis and Crohn's disease, which restrict his ability to eat certain vegetables. (Doc. 2, Ex. A at ¶ 7). Plaintiff suggests that patients with ulcerative colitis or Crohn's disease have food sensitivities that require them to determine which foods are tolerable for their own bodies, and which foods aggravate their symptoms. (Doc. 11, Ex. 2 at ¶¶ 3-4, Ex. D).[9] Plaintiff maintains that due to his illness, eating many vegetables, including lettuce, salad, broccoli, spinach, and beans, causes severe cramping that requires him to take pain medication. (Doc. 1, Ex. A at ¶ 6). Plaintiff also maintains that he cannot tolerate soy. (*Id*.) Because these foods cause him flare-ups, he alleges that his diet has been restricted to mostly waffles, potatoes, eggs, and Ramen soup. (*Id*. at ¶ 8). Given Plaintiff's alleged intolerance for vegetables and soy, he maintains that a vegetarian diet is not nutritionally sufficient. (Doc. 11, Ex. 2 at ¶¶ 6-7).

While the Court finds that Plaintiff has "a constitutional right not to be forced into a Hobson's choice of either eating food items which offend one's religious beliefs, or

---

[9] Plaintiff alleges that he has a well-documented history of intestinal and digestion-related problems. (Doc. 11, Ex. 3). However, the only medical evidence currently before the Court is a one page nursing assessment where Plaintiff self-reports that he has colitis. The nurse's only "assessment" is that Plaintiff had hemorrhoids. Plaintiff allegedly suffered from painful and bleeding hemorrhoids that were treated after he filed suit in this Court. *See Robinson v. Eddy*, Case No. 1:12cv840 (S.D. Ohio), Doc. 9 at PAGEID 91. That lawsuit does not mention that Plaintiff has colitis or Crohn's disease, and Plaintiff has failed to evidence the same here. In fact, the Court notes that Plaintiff's commissary receipts, which reflect that he purchases items such as hot sauce, barbeque potato chips, nacho cheese chips, jalapeno cheese squeeze, hot and spicy pickles, and coffee (Doc. 9-2), do not support Plaintiff's allegations of dietary restrictions.

eating very little or not at all" *Norwood v. Strada*, 249 F. App'x 269, 272 (3d Cir. 2007), other than Plaintiff's self-serving statements, there is no evidence that the vegetarian meal, which is halal, is not sufficient to sustain Plaintiff in good health.

### b. Sincerely held belief

Plaintiff must also show that his beliefs are: (1) sincerely held; and (2) of religious, rather than other nature, *e.g.*, gourmet. "A mere assertion of a religious belief does not automatically trigger First Amendment protections …. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Hernandez v. Pugh*, No. 4:12cv2040, 2013 U.S. Dist. LEXIS 445, at *19 (N.D. Ohio Jan. 2, 2013).

Defendants maintain that Plaintiff cannot show that his belief that he eat a strictly halal diet is sincerely held because he chooses to purchase and eat foods from the WCI commissary that are not halal. (Doc. 9, Ex. 2 at ¶¶ 5-6). For example, the beef flavor Maruchan Ramen Noodle Soup, Beef-E-Beef Sticks, and meat summer sausages that Plaintiff consumes are not halal. (*Id.*)

Plaintiff argues that since Defendants refuse to provide halal meat, his only access to meat is restricted to what is available in the commissary and what the prison provides for meals. (Doc. 11, Ex. 1 at ¶ 5). While Plaintiff acknowledges that these foods are not halal, Plaintiff claims that this does not demonstrate a lack of sincerity,[10] rather he

---

[10] Plaintiff maintains that his requests for halal were denied in 1998, 1999, 2005, and 2013 (Doc. 2-1 at ¶ 5). *See, e.g., Colvin*, 852 F.Supp.2d at 869 (noting that an inmate's constant complaints to staff were a testament to the sincerity of his beliefs).

purchases these items because he is not a vegetarian and he believes that he needs meat for his health. (*Id.*)

Because there is no evidence pending before this Court that Plaintiff requires meat to sustain his health, the Court cannot make any finding as to the sincerity of Plaintiff's beliefs. Accordingly, Plaintiff has failed to evidence a substantial likelihood of success on the merits.

### 2. RLUIPA

The Religious Land Use and Institutional Persons Act ("RLUIPA") provides protection for "institutionalized persons who are unable to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005). RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person –
>
> (1) Is in furtherance of a compelling governmental interest; and
> (2) Is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a).

Under RLUIPA, the inmate must present *prima facie* evidence that prison officials have substantially burdened his religious exercise. 42 U.S.C. § 2000cc-2(b). Such a burden exists where the government exerts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Buchanan v. Burbury*, No. 3:05cv7120, 2006

9

U.S. Dist. LEXIS 48244, at *6 (N.D. Ohio July 17, 2006) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)). In weighing an inmate's substantial burden, RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion," but "does not preclude inquiry into the sincerity of a person's professed religiosity." *Cutter*, 544 U.S. at 725. Therefore, "[t]he 'truth' of a belief is not open to question; rather the question is whether the objector's beliefs are 'truly held.'" *Id.* "As with a First Amendment claim, the sincerity of the Plaintiff's beliefs forms part of a RLUIPA inquiry." *Horacek v. Burnett*, 07-11885, 2008 U.S. Dist. LEXIS 19930, at *5 (E.D. Mich. Aug. 19, 2008). The burden then shifts to the government to demonstrate that the compelling interest test is satisfied. 42 U.S.C. § 2000cc-2(b).

Lawmakers supporting RLUIPA anticipated that courts would apply RLUIPA with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good roder, security, and discipline, consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 723. Thus, RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety," nor does it "override other significant interests." *Id.*

In order to make a *prima facie* showing that his religious exercise was "substantially burdened," Plaintiff must contend that his faith requires a specific practice. *Weinberger v. Grimes*, No. 07-6461, 2009 U.S. App. LEXIS 2693, at *4-5 (6th Cir. 2009). In this case, Plaintiff does not allege that eating meat is a fundamental tenet of

10

Islam or that it "is required, mandatory, or compulsory." *Benson v. Corr. Corp. of Am.*, No. 4:08cv469, 2009 U.S. Dist. LEXIS 69336 (N.D. Ohio July 14, 2009). Plaintiff alleges only that he is required to eat halal food – food that does not contain blood, alcohol, pork, or any other meat that is not slaughtered according to Islamic law.

Next, Plaintiff must show that his ability to practice his religion has been substantially burdened because he is served a vegetarian meal. Plaintiff maintains that the servers use the same utensils and gloves to serve both pork and non-pork items, so the vegetarian food becomes contaminated and is no longer halal. (Doc. 2-1 at ¶ 6). Defendants argue that neither the food for the vegetarian meals, nor the utensils and pans used to prepare and serve the vegetarian meals are cross contaminated with meat or non-halal food. (Doc. 9, Ex. 3 at ¶ 9) ("There is no cross contamination of vegetarian meals with other meals, especially those including meat, at WCI; separate pans are used to prepare the vegetarian meals and separate utensils are used to serve the vegetarian meals."). Regardless, Plaintiff is no longer housed at WCI, so his claim that the vegetarian meals are cross-contaminated is moot.

Finally, Defendants argue that serving Plaintiff vegetarian meals is the least restrictive means toward furthering a compelling government interest. While the Defendants acknowledge that "accommodating Robinson may be a manageable burden,"[11] serving the entire Muslim inmate population halal meat is cost prohibitive and

---

[11] Although Plaintiff simply seeks that the Court order the ODRC to provide a halal meal for him, such a request presents a slippery slope. Unless Plaintiff can evidence why his situation is unique (*i.e.*, because he does not obtain the requisite nutrients from a vegetarian diet), this Court must consider how granting such a request would affect the ODRC as a whole.

ODRC has a compelling interest in managing its budget and controlling its food service costs. (Doc. 13).[12] The United States Supreme Court instructs that "[w]hile [RLUIPA] adopts a 'compelling governmental interest' standard, 'context matters' in the application of that standard." *Cutter*, 544 U.S. at 723.

ODRC entered into a contract with ARAMARK Correctional Services Inc., effective September 8, 2011, for the operation and management of food service for the inmate population in all state-operated institutions. (Doc. 9, Ex. 4 at ¶ 3). The contract requires ODRC to pay ARAMARK a per diem rate for prepackaged kosher/halal meals per inmate of $3.609. (*Id.* at ¶ 4). The per diem rate covers the costs of 260 prepackaged kosher/halal meals state-wide per day. (*Id.*) Kosher/halal meals in excess of 260 meals cost $3.75 per meal. (*Id.*)

Prepackaged kosher meals are served to inmates who have been approved by the Religious Services Administrator for a religious meal accommodation. (*Id.* at ¶ 5). There are currently 136 inmates with an approved kosher meal accommodation. (*Id.*) The annual cost of serving these kosher inmates is $16,425.00. (*Id.*) There are 2,639 inmates who have declared their religion as Muslim. (*Id.* at ¶ 6). The projected annual cost of providing three halal meals from ARAMARK to Muslim inmates per day is

---

[12] *Linehan v. Crosby*, 346 Fed. Appx. 471, 473 (11th Cir. Fla. 2009) ("DOC has a compelling governmental interest in keeping costs down").

$10,836,394.00.  (*Id.* at ¶ 7).  The projected annual cost of providing two halal meals (excluding the breakfast meal) is $7,224,263.00.  (*Id.*)[13]

Defendants maintain that these increased costs would cause an extreme budgetary hardship to ODRC, and in order to pay for the special prepackaged halal meals from ARAMARK, ODRC would have to reduce costs equaling layoffs and staff reductions which will hamper ODRC from maintaining good order, security, and discipline.  (Doc. 9, Ex. 5 at ¶¶ 3, 5-6).  In this context, Defendants maintain that the request for prepackaged halal meals is "excessive, impose[s] unjustified burdens on other institutionalized persons, [and] jeopardize[s] the effective functioning of an institution." *Cutter*, 544 U.S. at 726.

Accordingly, Plaintiff has failed to present *prima facie* evidence that the ODRC policy (providing a vegetarian meal to those inmates who request a halal diet) violates his constitutional rights by burdening his religious exercise.

### 3. *Equal Protection*

In order to prove an Equal Protection violation under the Fourteenth Amendment, Plaintiff must demonstrate that Defendants treated similarly-situated individuals in a disparate matter.  *Gillard v. Norris*, 857 F.2d 1095, 1100 (6th Cir. 1988).  The unequal treatment must be the result of intentional and purposeful discrimination.  *Abdullah v. Fard*, No. 97-3935, 1999 U.S. App. LEXIS 1466, at *5 (6th Cir. 1999).  Plaintiff argues

---

[13] The Court recognizes that it is unlikely that each of the 2,639 Muslim inmates would request a halal diet.

13

that Defendants violated the Equal Protection clause "by granting kosher meals to Jewish inmates while denying Halal meals to Muslim inmates." (Doc. 1-2 at PageID 15).

First, Defendants did not deny Plaintiff a halal meal -- he is served a vegetarian meal that is halal.[14] Second, these classes of inmates (Jewish v. Muslim) are not similarly situated because they differ greatly in number.[15] Third, Plaintiff has not presented any evidence that the different treatment was motivated by purposeful discrimination. In fact, Defendants have articulated legitimate and compelling reasons for the policy. *See, e.g., Patel*, 515 F.3d at 815-16 (concluding that prisoner's equal protection claim failed because he had not shown that the prison's decision to serve kosher entrees and not halal entrees was motivated by intentional or purposeful discrimination)

Therefore, Plaintiff has not shown a likelihood of success on the merits.[16]

### B. Irreparable Harm

"To demonstrate irreparable harm, the plaintiffs must show that...they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be

---

[14] Plaintiff asserts that Defendants' policy requires him to be a vegetarian. However, Plaintiff has offered no evidence to support a claim that eating a vegetarian diet violates a basic and fundamental tenet of his religion.

[15] Additionally, Jewish inmates are not the only inmates receiving the kosher diet. For example, Assembly of Yahweh inmates may also qualify for kosher meals. (Doc. 9-3 at ¶ 5).

[16] The Court's finding that there is no likelihood of success on the merits is fatal. However, the Court will address the other three factors nonetheless. *Gonzales*, 225 F.3d at 625.

fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 578 (6th Cir. 2002).

If a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated. *Bonnel v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). *See, e.g., Hillside Productions, Inc. v. Duchane*, 249 F.Supp.2d 880, 900 (E.D. Mich 2003) (where a plaintiff's procedural due process rights were likely violated, a finding of irreparable harm should follow as a matter of law). Here, Plaintiff is unable to show a likelihood of success on his constitutional claim and thus also fails to evidence irreparable harm.

### C. Substantial Harm to Others or the Public

Defendants maintain that the effect of forced accommodation of all Muslim inmates' requests for a halal diet that includes religiously slaughtered meat would impose "unjustified burdens" upon ODRC and taxpayers, and "jeopardize the effective functioning" of ODRC's institutions. *Cutter*, 544 U.S. 709. Moreover, "[t]he paramount concerns in running a prison or a prison mental health facility are institutional security, preserving internal order, and establishing a therapeutic environment." *Washington v. Harper*, 449 U.S. 210, 213 (1990). The public has an interest in the state budget and safety and security of prisons. Straining the budget and impinging upon prison security will not advance the public interest.

15

## IV. CONCLUSION

The Court finds that Plaintiff has not met his extraordinary burden of establishing by clear and convincing evidence his entitlement to a temporary restraining order. Accordingly, Plaintiff's motion for a temporary restraining order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED**.

Date: 3/10/14 *s/ Timothy S. Black*
Timothy S. Black
United States District Judge